# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Pierce Farris, Jr. and | ) | |
| Pamela Jo Farris, | ) | Case No.: 05-13253-BGC-7 |
| | ) | |
| Debtors. | ) | |
| | | |
| New Millennium Buildings Systems, Inc. | ) | |
| fka Socar, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 06-00103 |
| | ) | |
| Charles Pierce Farris, Jr., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I. Background

A default judgment was entered against the debtor on November 9, 2006. The matters before the Court are an Answer and Motion to Set Aside Default Judgment filed on November 10, 2006, by the defendant; the Plaintiff's Memorandum in Opposition to Motion to Set Aside Default Judgment filed on November 28, 2006; and a Memorandum Brief in Support of Defendant's Motion to Set Aside Default Judgment filed on November 29, 2006. After notice, a hearing was held on November 29, 2006. Appearing were Robert Gish, Jr. for the defendant; and Gregory Joy and William Hereford for the plaintiff. The matters were submitted on the pleadings and oral arguments.

Based on the discussion that follows, the Court finds that the Motion to Set Aside Default Judgment should be granted and the default judgment entered against the debtor on November 9, 2006, should be set aside.

### II. Findings of Fact

### A. Adversary Proceedings and Related Matters

There are seven unrelated nondischargeability complaints pending against the

debtor.[1]  These proceedings are listed below in chronological order, according to adversary proceeding numbers. The status of each is discussed.

1.  The first nondischargeability complaint filed against the debtor was in General Steel, Inc. v. Charles Pierce Farris, Jr., A.P. No. 06-00059.  The debtor filed an Answer and Opposition to Default Judgment and an Amended Answer and Opposition to Default Judgment on April 5, 2006.  A status conference on this proceeding is set for January 24, 2007, at 10:30 a.m. along with the other pending proceedings.

2.  The second nondischargeability complaint filed against the debtor was Anderson & Associates, Inc. v. Charles Pierce Farris, Jr., A.P. No. 06-00100.  The debtor filed an Answer on July 21, 2006.  A status conference on this proceeding is set for January 24, 2007, at 10:30 a.m. along with the other pending proceedings.

3.  The third nondischargeability complaint filed against the debtor was Edward Damore, Kimberly A. Damore, Edward Damore as Trustee of Damore 2002 Family Trust, Kimberly A. Damore as Trustee of Damore 2002 Family Trust and TWO BY TWO, LLC v. Charles Pierce Farris, Jr., A.P. No. 06-00101.  The debtor filed an answer on July 24, 2006.  A status conference on this proceeding is set for January 24, 2007, at 10:30 a.m. along with the other pending proceedings.

4.  The fourth nondischargeability complaint filed against the debtor was Oxygen Service Company, Inc. v. Charles Pierce Farris, Jr., A.P. No. 06-00102.  The debtor filed an answer on June 21, 2006.  A status conference on this proceeding is set for January 24, 2007, at 10:30 a.m. along with the other pending proceedings.

5.  The fifth nondischargeability complaint filed against the debtor was New Millennium Building Systems, Inc. f/k/a Socar, Inc. v. Charles Pierce Farris, Jr., A.P. No. 06-00103.  Because this proceeding is the subject of the instant order, the events leading to the current status are discussed in detail.

    The New Millennium complaint was filed on May 22, 2006.  A Summons and Notice of Pretrial Conference was issued May 23, 2006, and a pretrial conference was set for June 26, 2006.

    The summons was executed by plaintiff's counsel on May 25, 2006.

---

[1] The Court takes judicial knowledge of the facts that Houston Steel Fabricators, LLC filed a Chapter 11 case in the Bankruptcy Court for the Middle District of Georgia, Case No. 05-50456.  The case was converted to one under Chapter 7 on March 8, 2005.  Mr. Farris signed the petition as the managing member of Houston Steel Fabricators, LLC.

2

The debtor filed an answer to the New Millennium complaint on June 21, 2006, but filed it in Airgas-South, Inc. v. Charles Pierce Farris, Jr., A.P. No. 06-00104 (the sixth complaint filed and pending against the debtor.) See Proceeding No. 5 in Airgas. That answer was correctly styled New Millennium Bldg Systems, Inc. formerly known as Socar, Inc. v. Charles Pierce Farris, Jr., and on its face referred to the New Millennium adversary proceeding number as A.P. No. 06-103 (the correct number for the Millennium complaint.) The debtor did not, and has not, served this answer on the plaintiff.

The debtor also filed his answer to the complaint in Airgas South, Inc. v. Charles Pierce Farris, Jr. on June 21, 2006. See Proceeding No. 6 in Airgas. While that pleading was correctly filed in the Airgas proceeding, (A.P. No 06-00104), on its face it referred to A.P. No. 06-00102 (the adversary proceeding number for the complaint filed in Oxygen Service Company, Inc. v. Charles Pierce Farris, Jr. (the fourth complaint filed and pending against the debtor).

On June 22, 2006, in response to the filing of the New Millennium answer in the Airgas proceeding, the clerk of court sent the debtor a Notice of Incorrect Event. Referring to proceeding numbers 5 and 6 in the Airgas matter, the notice read, "Due to an error having been made in the processing, Robert Charles Gish, Jr., Attorney for Defendant, shall enter the following corrections within 2 business days. (Answers Filed Are Styled For Another AP; Please Amend Answer With Correct Adversary Proceeding Case Number)."

The pretrial conference was held on June 26, 2006. Debtor's counsel and the plaintiff's counsel attended. The Court's official recording of the conference does not reflect discussion of the answer. A second status conference was set for September 27, 2006.

Because the "New Millennium" answer had not been filed in the New Millennium proceeding and because the New Millennium plaintiff had not been served with that answer, on September 26, 2006, the plaintiff filed both an Application for Entry of Default, (Proceeding No. 11), and Motion for Default Judgment, (Proceeding No. 12).

The second status conference (on all of the pending complaints) was held on September 27, 2006. Appearing were: Mr. Gish; Mr. S. Gregory Joy, attorney for the plaintiff in New Millennium by telephone; William Hereford, attorney for the plaintiff, appeared in person. At that conference the Court and the parties discussed the pending Motion for Default Judgment and when an answer was to be filed. The Court's record reflects that the participants discussed that an answer had been filed, albeit in the wrong proceeding.

On October 4, 2006, following this status conference, the Court entered an order which set the initial discovery deadline for all adversary proceedings. See

3

Case 06-00103-BGC    Doc 28    Filed 12/21/06    Entered 12/21/06 09:32:15    Desc Main
Document      Page 3 of 20

Proceeding No. 13 in this proceeding. The order also instructed the debtor to file an answer to the New Millennium complaint within 20 days and described the consequence if one was not filed. The October 4, 2006, Order read:

> Based on the representation of counsel, the initial discovery deadline is January 24, 2007. A status conference will be scheduled by a subsequent notice.
>
> A Motion for Default Judgment was filed on September 26, 2006, by the plaintiff. The Defendant is to file an answer within 20 days. If the Defendant does not file an answer, the Motion for Default Judgment shall be granted by a subsequent order. If the Defendant does file an answer, the Motion for Default Judgment is denied.

Order, entered October 4, 2006, Proceeding No. 13.

The debtor did not file an answer within the 20-day period and on November 9, 2006, the Court entered the following order:

> 1. The Request to Clerk to Enter Default is **GRANTED**;
>
> 2. Judgment is entered in favor of the Plaintiff New Millennium Buildings Systems, Inc. F/k/s Socar, Inc. and against the Defendant Charles Pierce Farris, Jr.; and
>
> 3. The debt of Charles Pierce Farris, Jr. To New Millennium Building Systems, Inc. in excess of $300,000 is nondischargeable.

Order, entered November 9, 2006, Proceeding No. 17.

The next day, on November 10, 2006, the debtor fled his Answer and Motion to Set Aside Default Judgment (Proceeding No. 19), which is the subject of the instant order. A hearing on the Motion to Set Aside the Default Judgment was held on November 29, 2006. A status conference on this proceeding is set for January 24, 2007, at 10:30 a.m. along with the other pending proceedings.

6. The sixth nondischargeability complaint filed against the debtor was Airgas-South, Inc. v. Charles Pierce Farris, Jr., A.P. No. 06-00104. As stated above an answer was filed in this proceeding on June 21, 2006, although on its face it referred to A.P. No. 06-00102 (the adversary proceeding number for the complaint filed in Oxygen Service Company, Inc. v. Charles Pierce Farris, Jr., the fourth complaint filed and pending against the debtor). A status conference on that this proceeding is set for January 24, 2007, at 10:30 a.m. along with the other pending proceedings.

4

7. The seventh nondischargeability complaint filed against the debtor was <u>Besco Steel Supply, Inc. v. Charles Pierce Farris, Jr. and Pamela Farris</u>, A.P. No. 06-00121. No answer has been filed in this proceeding and that fact was discussed at the status conference held on September 27, 2006. After that conference, the Court entered an order on October 4, 2006, requiring the debtor to file an answer in the <u>Besco</u> complaint within 20 days. After 20 days when an answer was not filed, on October 27, 2006, the plaintiff filed a <u>Motion for Default Judgment</u>. That motion is set for a hearing on January 24, 2007, at 10:30 a.m. along with the status conference for this and all other complaints.

### B. Debtor's Counsel's Explanations for the Failure to File an Answer in the <u>New Millennium</u> Proceeding

Debtor's counsel explained that the reason that he did not file an answer in the <u>New Millennium</u> **proceeding** was because he had filed an answer to the <u>New Millennium</u> **complaint**. He also explained that even after learning that the filed answer was filed in the wrong proceeding, he still believed that he had answered the complaint because his records indicated he had, and he believed that he did not need to take any other action. And finally he explained that even after the Court ordered him to file an answer in the <u>New Millennium</u> **proceeding**, he did not because he did not understand the Court's instructions, again because he believed that he had filed an answer.

Debtor's counsel supported his explanations by confessing that he not only was not proficient in using the Court's fully automated Case Management and Electronic Case Files system (CM/ECF), but was also having problems actually using the system. This is evident through the facts that one answer was filed in the wrong proceeding, one answer was filed in the correct proceeding but with the wrong adversary number, and one answer has yet to be filed. And it is evident from reviewing the Court's electronic docket that there are other problems with the manner in which debtor's counsel has filed material electronically in this case. In contrast, in debtor's counsel's defense, answers were filed correctly in four of the pending seven adversary proceedings.[2]

Debtor's counsel's actions have cost the plaintiff and this Court considerable time, expense and resources. As explained below, this Court has the authority to address those results.

---

[2] In addition, the Court notes that all parties agree that the debtor is currently incarcerated and has been for some time. The Court has not been made aware of whether the debtor has been convicted or is waiting trial. The parties have represented that the criminal jurisdiction involved is federal not state. The parties agree that neither plaintiffs' counsels nor the debtor's counsel have known the debtor's whereabouts for some time until recently.

## III. Conclusions of Law

The default judgment entered in the New Millennium proceeding against the debtor has two parts. Those are: (1) the judgment for nondischargeability and (2) the judgment for damages. In considering whether the default judgment as a whole should be set aside, each part must be considered independent from the other, as the reasons for setting aside each part is different. The question then becomes, what standards should the Court use to determine whether the default judgment should be set aside.

### A. Standards of Review

Both parties asked the Court to apply a Rule 60(b) test to determine whether to set aside the default judgment. The per curiam opinion of the court in Florida Physician's Ins. Co., Inc. v. Ehlers, 8 F.3d 780 (11th Cir. 1993) is frequently cited as representative of that test. The opinion in Ehlers includes:

> In order to establish mistake, inadvertence, or excusable neglect, the defaulting party must show that: (1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint. E.E.O.C. v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 528 (11th Cir.1990).

Id. at 783.[3]  See also In re Worldwide Web Systems, Inc., 328 F.3d 1291 (11th

---

[3] While Both parties argue in favor of the 60(b) standard, they both rely on the standard adopted in Turner Broadcasting System, Inc. v. Sanyo Electric, Inc., 33 B.R. 996, 1001 (N.D. Ga. 1983), aff'd 742 F.2d 1465 (11th Cir.1984), a non-60(b) standard. The standard applied in Turner was the Rule 55(c) "good cause" standard applied to consider whether to set aside an "entry of default" rather than a "default judgment." The difference is significant.

Writing for the Court of Appeals for the Eleventh Circuit in African Methodist Episcopal Church, Inc. v. Ward, 185 F.3d 1201 (11th Cir. 1999) Circuit Judge Gerald B. Tjoflat explains the general distinctions between the two types of standards. He wrote:

> The Federal Rules of Civil Procedure allow a court to set aside a default "for good cause," Fed R. Civ. P. 55(c), and to set aside a default judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect," or for "any other reason justifying relief from the judgment." Fed.R.Civ.P. 60(b)(1), (6); see also Fed R. Civ. P. 55(c).

Id. at 1202.

The court in U.S. v. Arnold, No. 5:99CV161OC21GRJ, 2001 WL 34106906, (M.D.Fla. 2001) explains why the distinction is important. The opinion there reads in part:

6

Cir. 2003).

As the discussion below demonstrates, it is not necessary for the Court to reach the test suggested by Ehlers. That is not to say that Rule 60(b) does not apply. It does. And this Court will apply it below. The reason the Court need not reach the Ehlers' test is that the default judgment the Court entered fails for different reasons and need not be reviewed under the Ehlers' test.

### B. Rule 60

The pertinent part of Rule 60 reads:

> (b) On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b).

### C. The Default Judgment

Clearly the plaintiff's request, and its intent, was to obtain an entry of default based on the debtor's failure to answer its complaint. When the Court granted the

---

There is an important distinction between an entry of default and a default judgment, in that the Court applies a different standard to each when determining whether to set aside the default. E.E.O.C. v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 528 (11th Cir.1990). "Although a motion to set aside a default decree under Fed.R.Civ.P. 55(c) is somewhat analogous to a motion to set aside a judgment under Fed.R.Civ.P. 60(b), U.S. v. One Parcel of Real Prop., 763 F.2d 181,183 (11th Cir.1985), **[t]he excusable neglect standard that courts apply in setting aside a default judgment is more rigorous than the good cause standard that is utilized in setting aside an entry of default**." Weingarten v. Campagna, 178 B.R. 283, 284 (M.D. Fla. 1995).

Id. at *2 (emphasis added).

plaintiff's Request to Clerk to Enter Default it granted the relief the plaintiff sought. And the Court created the simple situation of an entry of default. In hindsight, the Court should have stopped at that point, as neither the plaintiff's request, nor the evidence supported any additional relief. Unfortunately, the Court entered additional relief that clearly changed the character of the order from one of an entry of default to one for an entry of a default judgment.

With that change, the default judgment now has two distinct parts. Those are: (1) the judgment for damages, and (2) the judgment for nondischargeability. Because there is a different reason for setting aside each part, each will be considered independent of the other.

### 1. The Damages Portion of the Default Judgment

Except in limited circumstances, which this situation is not one, damages may not be entered against a party by way of a default judgment without an evidentiary hearing. Because no such hearing was afforded the debtor in this proceeding, the damages portion of the default judgment must be set aside. The mechanism for setting aside that judgment is Rule 60(b), by way of Rule 55, applicable to this proceeding by Rule 7055 of the Federal Rules of Bankruptcy Procedure.

The pertinent part of Rule 55 reads:

(a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

(b) Judgment. Judgment by default may be entered as follows:

(1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.

(2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with

8

Case 06-00103-BGC   Doc 28   Filed 12/21/06   Entered 12/21/06 09:32:15   Desc Main
Document     Page 8 of 20

written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

(c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Fed.R.Civ.P. 55

Writing for the Eleventh Circuit Court of Appeals in S.E.C. v. Smyth, 420 F.3d 1225 (11th Cir. 2005) Circuit Judge Gerald B. Tjoflat explained:

Rule 55(b)(2), which covers "all other cases," requires the district court to hold an evidentiary hearing "to determine the amount" of losses avoided. E.g., Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir.1985) ("[J]udgment of default awarding cash damages could not properly be entered 'without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation.' " (quoting United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir.1979))); Lowe v. McGraw-Hill Cos., 361 F.3d 335, 339-40 (7th Cir.2004) ("The Federal Rules of Civil Procedure make a clear distinction between the entry of default and the entry of a default judgment. **The default is entered upon the defendant's failure to plead or otherwise defend, Fed.R.Civ.P. 55(a), but if an evidentiary hearing or other proceedings are necessary in order to determine what the judgment should provide, such as the amount of damages that the defaulting defendant must pay, those <u>proceedings must be conducted before the judgment is entered</u>. See Rule 55(b)(2).")**.

Id. at 1231-32 (emphasis added) (footnote omitted but included below.)[4]

Footnote 13 to that passage reads:

---

[4] The fact that the amount could not be determined is evidenced by the Court's order that specified the amount as, "<u>in excess of</u> $300,000...." Order entered November 9, 2006 (emphasis added).

9

> An evidentiary hearing is not a per se requirement; indeed, Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone. See Fed.R.Civ.P. 55(b)(2) ("[The court may conduct such hearings ...." (emphasis added)). We have held that no such hearing is required where all essential evidence is already of record. See S.E.C. v. First Fin. Group of Tex., Inc., 659 F.2d 660, 669 (5th Cir.1981) ("Rule 55(b)(2) does not require the district court to hold either an evidentiary hearing or oral argument on a motion for a default judgment.") (citing Thomas v. United States, 531 F.2d 746, 748 (5th Cir.1976) ("Taxpayer's first contention that the district court should have held an evidentiary hearing and/or oral argument on the motion is without merit. All the essential facts were of record.")). Other circuits agree. See, e.g., KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 21 (1st Cir.2003). **Other circuits also agree, however, that such hearings are required in all but "limited circumstances," id., as when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages. Id. (collecting cases).** Those limited circumstances are not present here, where none of the evidence Johns sought to present was before the district court.

Id. at 1232, n.13 (emphasis added).

Judge Tjoflat explained the reason for these conclusions. He wrote:

> Basic notions of due process underpin this requirement. As the Supreme Court noted in Mullane v. Central Hanover Bank & Trust, Co., " '[the fundamental requisite of due process of law is the opportunity to be heard.' " 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (quoting Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914)). We believe that the right to be heard is of little value unless the party has some point of reference in established procedural rules to guide his continued participation in the proceedings, particularly when final judgment looms. In this case, Rule 55(b)(2) required the evidentiary hearing that the district court did not grant. Thus, the court abused its discretion when it granted the SEC's motion for judgment.

Id. at 1232.

Like the situation in Smyth, those limited circumstances were not present here. This was not a situation where the, "court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." Id. Similarly, it was not a situation where the damage amount claimed was a liquidated sum or one capable of

10

mathematical calculation. In contrast, as Judge Tjoflat explained, if "an evidentiary hearing or other proceedings are necessary in order to determine what the judgment should provide, such as the amount of damages that the defaulting defendant must pay, those proceedings must be conducted before the judgment is entered." Id. (emphasis added.) This Court did not conduct that proceeding. Therefore the Court did not have sufficient evidence to enter a "judgment."[5]

And, as Judge Tjoflat states, the failure to hold an evidentiary hearing before entering the default judgment, where such a hearing is required, could, in and of itself, constitute an abuse of discretion.

Rule 55(c) allows a Court to set aside a default judgment under Rule 60(b). In this instance, part 60(b)(1) is appropriate.

In Parks v. U.S. Life and Credit Corp., 677 F.2d 838 (11th Cir. 1982), (rehearing and Rehearing en banc denied), the Court of Appeals for the Eleventh Circuit recognized the following:

> Rule 60(b)(1) authorizes a court to grant relief from judgments for "mistake, inadvertence, surprise, or excusable neglect." The "mistakes" of judges may be remedied under this provision. Meadows v. Cohen, 409 F.2d 750, 752 n.4 (5th Cir. 1969). The rule encompasses mistakes in the application of the law. Oliver v. Home Indemnity Co., 470 F.2d 329 (5th Cir. 1972).
>
> The policy favoring such a construction is, of course, one aimed at preventing the unnecessary wasting of energies by both appellate courts and litigants. It seems that absent the chance of serious injury to the rights of any party, the possible saving of judicial energies warrants the use of such a discretionary reconsideration by the district court. Here the district court properly entertained Pruitt's motion which was filed within the period allowed for giving notice of appeal and in fact after notice of appeal had been filed. In such circumstances, it is difficult to see how this

---

[5] The plaintiff filed its Request to Clerk to Enter Default, along with a Motion for Default Judgment, and a Memorandum in Support of Motion for Default Judgment, on September 26, 2006. An Affidavit of Mr. Olin B. Kirven, Jr. was included with the memorandum as evidence in support of the motion. There are two reasons why the Court does not believe that the affidavit's existence would change the Court's conclusions. While the affidavit is certainly appropriate evidence, based on the law cited above, it is this Court's understanding that something more, such as a hearing, would be required before a default judgment could be entered. Second, this Court entered its order granting the plaintiff's Request to Clerk to Enter Default solely for the reason that the debtor did not act in accordance with this Court's order of October 4, 2006, the order that explained to the debtor that if he did not file an answer, a default judgment would be entered against him.

11

reconsideration by the district court could have worked an injustice to any party.

Id. at 839-40.

Based on the above, the Court finds that the damages portion of the default judgment entered against the debtor was entered improperly and in a mistaken application of the law. Clearly that portion of the judgment must be set aside.[6]

## 2. The Liability Portion of the Default Judgment

### a. Rule 60(b)(1)

The discussion above also applies to the liability portion of the judgment. The Court does not believe that Judge Tjoflat's instructions are limited to damages. As he stated, **"if an evidentiary hearing or other proceedings are necessary in order to determine what the judgment should provide... those proceedings must be conducted before the judgment is entered."** S.E.C. v. Smyth, 420 F.3d at 1232.

This Court believes that it should have conducted an evidentiary hearing on the debtor's liability also. As stated above, it is clear to the Court that the plaintiff's request, and its intent, was to obtain an entry of default based on the debtor's failure to answer its complaint. When the Court granted the plaintiff's Request to Clerk to Enter Default it granted the relief the plaintiff sought. And the Court created the simple situation of an

---

[6] In addition, this Court is confident that it may reduce a "default judgment" to an "entry of default" and apply a different standard. This was exactly what was done in In re Tires and Terms of Columbus, Inc., 262 B.R. 885 (Bankr. M.D. Ga. 2000). In that case the court recognized:

> The default judgment has been entered, however, the court finds that Defendant never personally received notice of the complaint and entry of default. The court will consider Defendant's motion for reconsideration as a motion to set aside the entry of default. This is significant because Fed. R. Civ. P. 55(c) (applicable to bankruptcy under Fed. R. Bankr. P. 7055(c)) ("Rule 55(c)") governs the setting aside of an entry of default while Fed. R. Bankr. P. 7060(b) ("Rule 60(b)") is employed when setting aside a default judgment. See Rogers v. Allied Media, Inc. (In re Rogers), 160 B.R. 249, 251-52 (Bankr. N.D. Ga.1993) (citing EEOC v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 527-28 (11th Cir.1990)). Furthermore, the Rule 60(b) "excusable neglect" standard used in setting aside default judgments is more rigorous than the Rule 55(c) "good cause" standard employed in setting aside an entry of default. See id.

Id. at 888. And based on the facts, the Court finds for "good cause" that the damages portion of the default judgment should be set aside.

12

Case 06-00103-BGC    Doc 28    Filed 12/21/06    Entered 12/21/06 09:32:15    Desc Main
Document      Page 12 of 20

entry of default. In hindsight, the Court should have stopped at that point, as neither the plaintiff's request, nor the evidence supported any additional relief. Unfortunately, the Court entered additional relief that clearly changed the character of the order from one of an entry of default to one for an entry of a default judgment.

So again, the Court must recognize a misapplication of the law. And as explained above, that requires the Court to set aside the liability portion of the default judgment.

### b. Rule 60(b)(6)

In addition to the above, the Court finds that the liability portion of the judgment should be set aside under Rule 60(b)(6) of the Federal Rules of Civil Procedure, as a matter of equity.

### (1) Relief from a Final Judgment

Rule 60(b)(6) allows a bankruptcy court to relieve a litigant from a final judgment under exceptional circumstances.[7]

Writing for the Court of Appeals for the Eleventh Circuit in In re Hughes, 873 F.2d 262 (11th Cir. 1989) Senior Circuit Judge John R. Brown, sitting by designation, wrote that there is, "A Place for Equity in Bankruptcy." Id. at 264. He explained:

> Without examining, or deciding, in detail whether and to what extent the decision is affected by the promulgation of Bankruptcy Rule 9024 and the extent, if any, that the matter is within the catch-all provision of comparable Rule 60(b)(6), we think that it is appropriate to follow what we long ago did in Goff. There we said: "considering all the facts and circumstances disclosed by the record, we conclude that it would be appropriate to remand the case to ... allow the bankrupt, at his own expense, a reasonable time in which to place his books and records in a condition that will substantially reflect his financial status." Goff v. Russell, 495 F.2d at 202. We conclude, therefore, that under Goff the bankruptcy judge should afford Hughes a further opportunity to avoid denial of

---

[7]According to Rule 60(b), relief under subsection (6) must be brought within a reasonable time. Fed.R.Civ.P. 60(b)(6). What is reasonable depends on the facts of each case. Golden Oldies, Ltd. v. Scorpion Auction Group, Inc., 199 F.R.D. 98, 100 (E.D.N.Y. 2001); Harduvel v. General Dynamics Corp., 801 F.Supp. 597, 603 (M.D. Fla. 1992). Periods equal to, and in excess of, the twenty months here have been considered reasonable. Matter of Emergency Beacon Corp., 666 F.2d 754, 760 (2nd Cir. 1981); In re Krautheimer, 210 B.R. 37, 45-46 (Bankr. S.D.N.Y. 1997). Based on the facts, the Court finds that the time within which relief was requested here was reasonable.

13

discharge under § 727(a)(3) and (5) by presenting additional documents
and records to the bankruptcy judge.

Id.

The opinion of the Court of Appeals for the Tenth Circuit in In re Gledhill, 76 F.3d 1070 (10th Cir. 1996) lists some important comments about Rule 60(b)(6). Writing for the court, Circuit Judge Bobby R. Baldock stated:

> "Federal Rule of Civil Procedure 60(b) provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988). We have observed that Rule 60(b) "gives the court a 'grand reservoir of equitable power to do justice in a particular case.'" Pierce v. Cook & Co., 518 F.2d 720, 722 (10th Cir.1975) (en banc) (quoting Radack v. Norwegian America Line Agency, Inc., 318 F.2d 538, 542 (2d Cir.1963)), cert. denied, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976). Rule 60(b)(6) grants federal courts broad authority to relieve a party from a final judgment "upon such terms as are just ... for ... any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). "District courts may grant a Rule 60(b)(6) motion only in 'extraordinary circumstances' and only when such action is necessary to accomplish justice." Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 729 (10th Cir.1993); see also Johnston v. Cigna Corp., 14 F.3d 486, 497 (10th Cir.1993) ("Relief under Rule 60(b)(6) ... is warranted only in exceptional circumstances"), cert. denied, 514 U.S. 1082, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995). A court may not premise Rule 60(b)(6) relief, however, on one of the specific grounds enumerated in clauses (b)(1) through (b)(5). Liljeberg, 486 U.S. at 863, 108 S.Ct. at 2204.

Id. at 1080.

Application of these principals in this Circuit is appropriate. Writing for the court in U.S. v. Certain Real Property Located at Route 1, Bryant, Ala., 126 F.3d 1314 (11th Cir. 1997), Circuit Judge Stanley F. Birch Jr. explained:

> Motions under Rule 60(b) are "directed to the sound discretion of the district court." Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir.1984). Appellate review therefore is limited to whether the district court abused its discretion in denying the Rule 60(b) motion. Id.
>
> The claimants contend that they were entitled to relief from final judgment under Rule 60(b)(6). We have characterized this umbrella provision as a " 'grand reservoir of equitable power to do justice in a particular case when

14

relief is not warranted by the preceding clauses.' " Griffin, 722 F.2d at 680 (quoting 7 J. Lucas & J. Moore, Moore's Federal Practice ¶ 60.27[2] at 375 (2d ed.1982)). "It is well-established ... that relief under this clause is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." Id.

Id. at 1318.

### (2) Application of Rule 60(b)(6)

Do those exceptional circumstances exist here? The factors this Court should apply to make that determination are listed in the following. Writing for the Court of Appeals for the Fifth Circuit in Seven Elves, Inc. v. Eskenazi, 635 F.2d 396 (5th Cir. 1981), (adopted by the Court of Appeals for the Eleventh Circuit in Rice v. Ford Motor Co., 88 F.3d 914, 919 (11th Cir. 1996)), Circuit Judge Albert Tate Jr. explained:

> In United States v. Gould, 301 F.2d 353, 355-56 (5th Cir. 1962), quoting 7 Moore's Federal Practice P 60.19, at 237-39, this court delineated factors that should inform the district court's consideration of a motion under Rule 60(b): (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments. Id.

Id. at 402.

In considering all of the above factors, this Court is acutely aware that it should not set aside this default simply because the Court believes that it would be the "right" thing to do or because defaults are simply not favored. Again writing for the Court in African Methodist Episcopal Church, Inc. v. Ward, Judge Tjoflat explained:

> The district court, in granting the defendants' motion to set aside the default and the default judgment, provided no reason for granting the motion other than its belief that the case ought to be decided on the merits. This is certainly a noble sentiment; inherent in the adversary

15

system of justice is the idea that each side ought to be heard prior to a court's entry of final judgment. However, that same system requires that the court have the power to compel parties to appear before it. The threat of default (and default judgment) is the court's primary means of compelling defendants in civil cases to appear before the court. If these defaults could be put aside without cause, the threat of default would be meaningless, and courts would lose much of their power to compel participation by civil defendants.

Id. at 1203.

In contrast, there are numerous reasons here why the majority of the above factors are satisfied, and why this default judgment should be set aside under Rule 60(b)(6). The combined effect of these reasons establish the "exceptional circumstances" exception under Rule 60(b)(6) that allows the Court to relieve the debtor from the final judgment entered as a default judgment. And those same reasons demonstrate why this Court should exercise its equitable power to do justice in this particular case. Those reasons are the following.

### (a) An Answer <u>Was Filed</u> in Response to the <u>New Millennium</u> Complaint

The debtor filed an answer to the New Millennium complaint. Yes, it was filed in the wrong proceeding, and it was not served. But an answer was filed. It seems to this Court that if there are circumstances where even a <u>complete</u> failure to answer could be set aside, surely a situation where an answer was filed in the wrong proceeding is a situation that could support the setting aside of a default.

### (b) Answers Were Filed in Other Proceedings

The debtor, or at least his counsel, filed answers in five of the seven complaints pending against the debtor. Clearly, the debtor was not ignoring his circumstances. In addition, his attorney has attended and participated in the hearings in these cases.

### (c) The Debtor Is Incarcerated

The parties agree that the debtor is currently incarcerated and has been for some time. And the parties agree that neither plaintiffs' counsels nor the debtor's counsel have known the debtor's whereabouts for some time until recently. While there is little excuse for debtor's counsel failing to file a timely answer, the lack of assistance from the debtor that must be presumed may be some reason for the failure.

16

### (d) The Motion to Set Aside the Default Judgment was Timely

The motion to set aside the default judgment was filed within one day of the entry of the judgment. While debtor's counsel may not have acted promptly in the past, his actions, <u>probably without the assistance of the debtor</u>, in regard to addressing the default judgment were more than adequate.

### (e) An Evidentiary Hearing was Required before a Default Judgment Could Be Entered

As discussed above, the Court did not have sufficient evidence to enter a default "judgment" against the debtor. Based on the law in this Circuit, entering a default judgment without such evidence could be considered an abuse of discretion in and of itself.

### (f) Prejudice to the Plaintiff

Other than the costs of being required to participate in the immediate matters before the Court, the plaintiff will not be prejudiced if the default is set aside. When the plaintiff filed its complaint, it did so with the anticipation that this matter would be resolved through either negotiation or trial. The Court cannot believe that the complaint was filed in anticipation that a judgment would be obtained though default. In other words, the Court assumes the plaintiff was in this case for the "long haul." Consequently, <u>not</u> ending the process now, is not prejudicial to the plaintiff. That process will continue along its original track.

In contrast, this Court assumes that the plaintiff did not anticipate costs of prosecuting a motion for default judgment and the costs of supporting that judgment, where the reasons for the entry of default were the result of the debtor and debtor's counsel's failure to follow the orders of this Court. While the Court accepts some responsibility for some of the failures that led to the entry of a multi-thousand dollar, nondischargeability judgment against the debtor, the facts thus far demonstrate that much of that responsibility lies with debtor's counsel who not only failed to represent his client in direct contradiction of the orders of this Court, but also demonstrate that he does not have the automation skills to participate in this Court's electronic case files system. Those failures caused the Court and the plaintiff considerable problems, delays, and expense. Consequently, whatever those costs are, they are directly related to the failure of the debtor and the debtor's attorney to properly manage these proceedings.

As an alternative to denying the debtor's motion to set aside the default judgment, "an alternative sanction better serves the interests of justice." <u>Consolidated Rail Corp. v. Graebers Lumber Co.</u>, No. 87-7508, 1989 WL 113056 at *2 (E.D. Pa.

September 26, 1989). There is authority in this Circuit for imposing that alternative sanction. The opinion of the Court of Appeals for the Eleventh Circuit in <u>Malautea v. Suzuki Motor Co.</u>, 987 F.2d 1536 (11th Cir.1993) includes:

> We also affirm the fines imposed on the defendants and the defense attorneys of record pursuant to the district court's inherent power to control the proceedings before it. "[D]eeply rooted in the common law tradition is the power of any court to 'manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.' " <u>Carlucci v. Piper Aircraft Corp.</u>, 775 F.2d 1440, 1447 (11th Cir.1985) (citation omitted). Courts' inherent power also extends to parties to litigation. <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, ___, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991).

<u>Id</u>. at 1545.

Based on the above, the Court finds that if the plaintiff chooses, it may file application for reimbursement of professional fees and expenses it incurred in prosecuting the matters associated with the default judgment. If one were filed, the Court would treat the matter like any other application for compensation. In that manner, a hearing would be held and due process will be afforded the debtor and his counsel before a decision is made on whether sanctions should be imposed.

Notwithstanding a hearing on sanctions, the Court finds, based on debtor's counsel's representations regarding his skills in navigating the Court's CM/ECF system, that it may require debtor's counsel, without a hearing, to again enroll in, and again complete, the Court's training class for new CM/ECF users and applicants for authority to participate in that system. Counsel should complete that class within the next six months. If he does not, a show cause order will be entered to determine whether debtor's counsel's authority to participate in the system should be revoked.

### (g) Default Judgments Are Disfavored

"Default judgments generally are disfavored. <u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309, 1316 (11th Cir.2002); see also <u>In re Worldwide Web Systems, Inc.</u>, 328 F.3d 1291, 1295 (11th Cir.2003)." <u>Rolle v. Worth County School Dist.</u>, 128 Fed.Appx. 731, 732, n.3 (11th Cir. 2005) (unpublished opinion cited in conformity with Rule 36-2, United States Court of Appeals for the Eleventh Circuit Rules).

The cited portion of <u>Worldwide Web Systems</u> reads:

there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor. See <u>Ehlers</u>, 8 F.3d at 783 (citing <u>Gulf</u>

>     Coast Fans, Inc. v. Midwest Elecs. Imps., Inc., 740 F.2d 1499, 1510-11
>     (11th Cir.1984)); see also Seven Elves, Inc. v. Eskenazi, 635 F.2d 396,
>     401-02 (5th Cir. Unit A Jan.1981) (discussing Rule 60(b) balancing of the
>     desire to preserve the finality of judgments with the desire that judgments
>     reflect the merits of the case).

In re Worldwide Web Systems, Inc., 328 F.3d 1291, 1295 (11th Cir. 2003).

As explained above there are six other nondischargeability complaints pending against the debtor. Those complaints may go to trial. And as explained above, at best a trial on the damages portion of the instant default judgment must be held before the Court may award damages. As a practical matter, the merits of this case could be heard at the same time with all of the other matters with little additional time or resources.

### (h) The Debtor as the Client

The obvious argument that could be made in opposition to setting aside the default is that the debtor and his attorney, after discussion with and advice from this Court, could have easily corrected their procedural defaults. But they did not. The attorney for the debtor explains that he did not understand what he was supposed to do. The Court cannot understand how that could be true, particularly after the Court entered a short, concise, simple order that explained exactly what should have been done. What then are the consequences for the debtor? What are the consequences for his attorney? Are those the same?

Some times there may be a situation where there is a, "type of malfeasance by an attorney that results in such dire consequences for his client that justice requires the courts to step in and correct the situation." Chick Kam Choo v. Exxon Corp., 699 F.2d 693, 697 (5th Cir. 1983). That is the situation here. The consequences to the debtor are dire. Those consequences were caused mainly by a failure to file a proper answer, and there is so little relationship between that failure and the consequences of a nondischargeability judgment, this Court must step in and correct the situation.

Similarly, the per curiam opinion in Ford v. Fogarty Van Lines, Inc., 780 F.2d 1582 (11th Cir. 1986) includes:

> While the district court has broad powers under the Federal Rules of Civil
> Procedure to impose sanctions for a party's failure to abide by court
> orders, dismissal of an action with prejudice is a "sanction of last resort,
> applicable only in extreme circumstances." State Exchange Bank v.
> Hartline, 693 F.2d 1350, 1352 (11th Cir.1982). A party should not be
> punished for his attorney's mistake absent a clear record of delay or willful
> contempt and a finding that lesser sanctions would not suffice. Hildebrand
> v. Honeywell, Inc., 622 F.2d 179, 181 (5th Cir.1980). A pattern of willful

disobedience is not present in this case. Silas v. Sears, Roebuck & Co., Inc., 586 F.2d 382, 385 (5th Cir.1978). A party's simple negligence in complying with a court's order does not warrant dismissal. E.E.O.C. v. Troy State University, 693 F.2d 1353, 1357 (11th Cir.1982).

Id. at 1583.

There is no "clear record of delay or willful contempt" here.  The Court is convinced that debtor's counsel did not intend to delay these proceedings, and he certainly has not acted contemptuously.  And this Court cannot find that lesser sanctions would not be sufficient.  As discussed above, the Court finds that sanctions are appropriate, but that those sanctions should be something less than denying the motion to set aside the default judgment.

### (3) Conclusion to Application of Rule 60(b)(6)

There are many individual reasons to set aside the default judgment under Rule 60(b)(6) as described by Circuit Judge Birch as the, "umbrella provision as a " 'grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses...."  126 F.3d at 1318.  This is true even more so when these reasons are considered together.

Based on the above, the Court finds that the liability part of the default judgment should be set aside under Rule 60(b)(6).  The combined effect of the above reasons establish the "exceptional circumstances" exception under Rule 60(b)(6) that allows a bankruptcy court to relieve a litigant from a final judgment and demonstrate why this Court should exercise its equitable power to do justice in this particular case.

A separate order will be entered contemporaneously with this Memorandum Opinion.

Dated:  December 21, 2006           /s/Benjamin Cohen
                                    BENJAMIN COHEN
                                    United States Bankruptcy Judge

BC:pb